GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v.
W. E. FALES ET UX.

Decided November 11, 1903.

1.—Damages—Negligence—Proximate Cause—Evidence.

Evidence considered and held sufficient to establish negligence on the part of the railway company as proximate cause for the injuries and property losses declared on in the suit for damages.

2.—Common Carriers—Liability for Loss of Baggage.

In the absence of legislation limiting the responsibility of carriers it can not be assumed that the general law prescribes any definite fixed limit to the value of baggage beyond which the carrier is not liable. What is a reasonable quantity of baggage for which a carrier should be held liable under the circumstances is a question of fact for the jury. It is not required that when the passenger delivers his baggage for transportation he shall inform the carrier of the specific articles constituting it.

3.—Practice on Appeal—Assignment of Error.

An assignment of error complaining of two distinct rulings of the court in no wise related or connected and presenting two separate and distinct questions, is not entitled to consideration on appeal.

4.—Contract Limiting Liability—Interstate Commerce—Charge.

The provision of our statute which prohibits common carriers from limiting their liability, as it exists at common law, by stipulations in the bill of lading, is valid as applied to contracts for interstate transportation of property. Special charge stating the converse of this principle was correctly refused.

5.—Measure of Damages—Evidence—Lost Baggage.

The measure of damages for lost baggage is the reasonable value of the same at the point of destination, and not at an intermediate point though that point be where the initial carrier's line connects with the terminal carrier's. Proof, therefore, of the value at El Paso of baggage destined to San Francisco was properly excluded.

6.—Carrier of Passengers—Accident—Negligence Presumed.

Where an accident happens upon a railway from which a passenger sustains an injury by the breaking down of the carriage, or by the running off of the train, or the spreading or breaking of the rails, the very nature of the occurrence will be prima facie evidence of the negligence of the company or its servants. Note a charge objectionable as directing conclusive effect to a particular fact, held under the principle stated to be harmless error.

7.—Same—Presumption.

Otherwise and briefly stated, the plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence sufficient to rebut this presumption.

Appeal from the District Court of El Paso. Tried below before Hon. J. M. Goggin.

*Baker, Botts, Baker & Lovett* and *Beall & Kemp*, for appellant.

*Richard F. Burgess*, for appellee.

NEILL, ASSOCIATE JUSTICE.—This is an action to recover damages for personal injuries to Mrs. W. E. Fales and loss of baggage of appellees caused by the alleged negligence of appellant. It was alleged in appellees' petition that on the 6th day of May, 1902, they were passengers on one of appellant's cars from San Antonio to El Paso, and thence to

California; that "said train was, through the negligence and careless-
ness of defendant's agents and employes, derailed and thrown from the
track;" and that the accident resulted in serious and permanent per-
sonal injuries to Mrs. Fales, and the destruction of their baggage of the
value of $2669.95.

The appellant answered by special demurrers, some of which were
sustained and some overruled; pleas of not guilty and general denial;
inevitable accident, unreasonable and improper items of baggage, and
by pleading a special contract limiting the baggage to wearing apparel
not exceeding in value $100.

The case was tried before a jury, and the trial resulted in a judgment
for appellees for $10,000 for personal injuries to Mrs. Fales, and $1000
for loss of baggage, and $1000 for loss of services and time of his wife
to Mr. Fales.

*Conclusions of Fact.*—On the 6th day of March, 1902, W. E. Fales
bought two tickets in San Antonio from appellant company, which were
stamped "G. H. & S. A. Ry., San Antonio, March 6, 1902, city office."
Each ticket bore the following words: "Issued by the Galveston, Har-
risburg & San Antonio Railway Company, good for one second class
passage to point on Southern Pacific Company, Pacific system, desig-
nated on coupon attached, when officially stamped, subject to the fol-
lowing contract: In selling this ticket this company acts only as agent,
and is not responsible beyond its own line.  5.  Baggage liability is
limited to wearing apparel not exceeding $100 in value." The contract
part of the tickets upon one was signed by Mrs. W. E. Fales, and the
other by Mr. W. E. Fales.  The point designated in the coupon attached
to the ticket as the destination of the passengers was San Francisco, Cal.
On the same day, by virtue of said tickets, they took passage at San
Antonio on one of appellant's trains for San Francisco. The train on
which they were riding, and in which their baggage was carried, was
derailed, wrecked and burned near Maxon Springs, Texas, on March 7,
1902.  The following testimony taken from the record, is all it contains
in regard to the catastrophe: "At the time of the accident appellees
were riding in one of the tourist sleeping cars.  The train, with the
exception of one of the standard Pullman sleepers, was derailed, wrecked
and burned near Maxon Springs, Texas, about 3:30 a. m. on the 7th
day of March, 1902.  Some time prior to the derailment Mr. Fales was
awakened in his berth by the fast running of the train and swaying of
the car, and thought it was running about fifty or sixty miles an hour
when it struck the curve where the derailment occurred.  The engine,
tender, baggage, mail and all the other cars, with the exception of the
Pullman mentioned, were derailed, thrown one upon the other, wrecked
and burned.  About five minutes after the derailment occurred Mr.
Fales found and carried his wife from the wreck.  She was for about
fifteen minutes thereafter unconscious, and, when she recovered con-
sciousness, complained of pains in her head and back."

Since the disaster Mrs. Fales has suffered continuous mental and physical pain from the injuries inflicted, has required the constant care and attention of her husband, has been unable to discharge her household duties or render him any service, and her physical and nervous condition has continued to grow worse, and the evidence is sufficient to warrant the conclusion that she will remain a helpless suffering invalid for life.

The two trunks containing appellees' baggage were received by appellant and placed on the same train upon which they took passage. The trunks nor their contents have never been delivered to appellees, but were destroyed by fire in the wreck near Maxon Springs. The value of said baggage at its place of destination, San Francisco, was $1000.

From the evidence we conclude that the derailment and wreck of the train, the consequent injuries to Mrs. Fales, the loss of her time and services, and the destruction of appellees' baggage, were proximately caused by the negligence of appellant, and that by reason thereof appellees have been damaged to the extent found by the jury.

*Conclusions of Law.*—1. It is complained that "the court erred in overruling defendant's exception to that part of plaintiff's petition claiming loss of baggage, because the value claimed is greatly in excess of what would be customary, fair and reasonable in respect to travelers' baggage, and because the number of articles claimed as baggage is grossly unreasonable in amount and in excess of what is usually carried by travelers upon a journey.

It can not be determined from this assignment, nor from the proposition and statement under it, what items claimed by appellees as baggage should, under appellant's contention, have been excluded. The court did sustain the exception to some of the items; for instance, "specimens of gold quartz, package of legal documents, insurance papers, mining stocks, inventories, will, report of estate of deceased, family pictures, marriage certificate, etc., solid silverware and old coins." As the items to which the exception was not sustained are not referred to either in the assignment, proposition, or statement under it, it is not incumbent upon us to enumerate them. They seem to us, however, to only include such articles of personal convenience or necessity as are usually carried by passengers for their personal use. A woman's jewelry and every article pertaining to her wardrobe that may be necessary or convenient to her traveling, is regarded in law as baggage. In the absence of legislation limiting the responsibility of carriers, it can not be assumed that the general law prescribes any definite fixed limit to the *value* of baggage beyond which the carrier is not liable. Hutch on Carr., sec. 681a. What is a reasonable quantity of baggage for which a carrier should be held liable under the circumstances, is a question of fact for the jury. Hutch. on Carr., sec. 688; Jones v. Priester, 1 White & W., secs. 613, 614.

In order to fix the liability upon a common carrier for the loss of its

passengers' baggage, it is not necessary that the owner should have, when the baggage is delivered for transportation, informed the carrier of the specific articles constituting it. If it is in fact baggage, is received by the common carrier for transportation, and is never delivered to the passenger, the liability is fixed.

We conclude, therefore, that the court did not err in overruling the exceptions to appellees' petition, as is complained of in appellant's second, third and fourth assignments.

2. The fifth assignment of error complains of two distinct rulings of the court not related to each other, but presents and raises two separate and distinct questions. It is therefore not entitled to consideration. Texas & P. Railway Co. v. Donovan, 86 Texas, 379, 25 S. W. Rep., 10; Cammack v. Rodgers, 73 S. W. Rep., 795.

3. There was no error in the court's refusal to instruct the jury, at appellant's request, "that the stipulations contained in appellees' tickets limiting appellant's liability for loss of baggage to $100 to the holder of each ticket, it being an interstate shipment, is valid and binding, except as against negligence of the railway company." The provision of our statute which prohibits common carriers from limiting their liability as it exists at common law by stipulations in the bill of lading is valid, as applied to contracts for interstate transportation of property. Armstrong v. Railway Co., 92 Texas, 117, citing Railway Co. v. Solan, 169 U. S., 133; Railway Co. v. Devier, 75 Texas, 572; Railway Co. v. Carter, 29 S. W. Rep., 565; Railway Co. v. Withers, 40 S. W. Rep., 1073; Railway Co. v. Eddins, 26 S. W. Rep., 162; Mexican Nat. Railway Co. v. Ware, 60 S. W. Rep., 343. State statutes prohibiting common carriers from limiting their common law liability by stipulations in the contracts of shipment are not in themselves regulations of interstate commerce, though they control in some degree the conduct and liability of those engaged in such commerce; and so long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of commerce. Railway Co. v. Solan, 169 U. S., 133. Hence, it is held that a ticket limiting liability for loss of passenger's baggage to $100 does not relieve the road receiving the baggage from its common law liability when the property is lost on its line. Railway Co. v. Foltz, 3 Texas Civ. App., 644; Railway Co. v. Scharfermeyer, 72 S. W. Rep., 1037.

4. The court did not err in excluding testimony offered by appellant to show the market value at El Paso of the class and kind of the articles of appellees' baggage, nor in instructing the jury "that the measure of plaintiffs' damage for lost baggage would be the reasonable value of such baggage in San Francisco." The measure of damages for the loss of baggage is its reasonable value at point of destination, not at an intermediate point, though it be where the initial carrier's line connects with the terminal carrier's. 3 Suth. on Dam., sec. 932; Missouri, K. & T. Railway Co. v. Cook, 27 S. W. Rep., 771. Some of the articles lost were shown to be personal wearing apparel of appellees, and others of

daily use carried on the journey, the value of which is not determinable by the market. Wells-Fargo Exp. Co. v. Williams, 71 S. W. Rep., 314; Railway Co. v. Nicholson, 61 Texas, 550. It was therefore not essential to the admissibility of Mr. Fales testimony as to value that he should be acquainted with the market value of the articles in San Francisco.

Having thus disposed of all the questions affecting appellant's liability as to the baggage, we will now consider those relating to the personal injuries of appellees.

5. In the fourth paragraph of its charge the court instructed the jury as follows: "If you believe from a preponderance of the evidence that the plaintiff, Mrs. W. E. Fales, was injured while a passenger on one of defendant's passenger trains, as alleged by plaintiffs, and that said passenger train was derailed and wrecked and that the derailment and wrecking of said train was the proximate cause of the said Mrs. W. E. Fayles' injury, if any, then in that event you will find for the plaintiffs as to their claim for damages for the personal injuries so sustained by Mrs. Fales, if any personal injuries you believe from the evidence she suffered thereby."

It is urged as an objection to this paragraph that "in the absence of a provision of law giving a conclusive effect to a particular fact, it is error for the court to instruct what effect should be given it." Under the authorities in this State, the charge is undoubtedly obnoxious to this objection. Lauchheimer v. Saunders, 65 S. W. Rep., 500; Mexican C. Railway Co. v. Lauricella, 87 Texas, 277. But in view of the undisputed evidence as to the derailment and wreck of the train—no attempt having been made by appellant to explain the cause of the occurrence of the catastrophe, and show that it was due to a cause for which it was not answerable—the question presents itself, was the appellant prejudived by the error? In the cast last cited, in which a similar error was presented by the charge, it is said by the Supreme Court: "It does not follow, however, as we think, that the judgment should be reversed. 'Where an accident happens upon a railway from which a passenger sustains an injury by the breaking down of the carriage, or by the running off of the train, or the spreading or breaking of the rails, the very nature of the occurrence will be prima facie evidence of the negligence of the company or its servants.' Hutch on Carr:, sec. 800. The rule thus stated by the eminent author cited is very generally recognized." Accordingly, when the derailment of a train or car results in the injury to a passenger, the burden is on the carrier to show that the accident was not caused by defective cars or roadbed or by the negligence of an employe. Montgomery, etc., Railway Co. v. Mallette, 92 Ala., 216, 9 So. Rep., 365; Alabama, etc., Railway Co. v. Hill, 93 Ala., 521, 30 Am. St. Rep., 71, 9 So. Rep., 725; St. Louis, etc., Railway Co. v. Mitchell, 57 Ark., 421, 21 S. W. Rep., 884; Kansas, etc., Railway Co. v. Miller, 2 Colo., 458; Pittsburg Railway Co. v. Williams, 74 Ind., 466; Southern Kansas Railway Co. v. Walsh, 45 Kan., 659, 26 Pac. Rep., 47; Louisville, etc., Railway Co. v. Smith, 2 Duv. (Ky.), 558; Stevens v. Railway

Co., 66 Me., 77; Baltimore, etc., Railway Co. v. Worthington, 21 Md., 283, 290, 83 Am. Dec., 580, 587; Wilson v. Northern Pac. Railway Co., 26 Minn., 280; 3 N. W. Rep., 334; Spellman v. Lincoln, etc., Co., 36 Neb., 896, 38 Am. St. Rep., 757, 55 N. W. Rep., 271, 20 Law. Rep. Ann., 319; Taylor v. Grand Trunk Railway Co., 48 N. H., 314; 2 Am. Rep., 233; Texas & P. Railway Co. v. Gardner, 114 Fed. Rep., 186; Brenmer v. Illinois Cen. Railway Co., 101 Ill. App., 198. It was upon this principle the Supreme Court, despite the error in the charge, affirmed the judgment in the Lauricella case. To have done otherwise would have been to smother the soul and spirit of the law beneath the weight of a strict and rigid formula. It is not right to stifle justice that way.

Sir Frederick Pollock, in his work on Torts, illustrates the distinction between cases of tort in which there is no contract and where there is, thus: "A coach runs against a cart; the cart is damaged, the coach is upset, and a passenger in the coach hurt. The owner of the cart must prove that the driver of the coach was in fault. But the passenger in the coach can say to the owner: 'You promised for gain and reward to bring me safely to my journey's end, so far as reasonable care and skill could attain it. Here am I thrown out on the road with a broken head. Your contract is not performed; it is for you to show that the misadventure is due to a cause for which you are not answerable.'" Continuing, he says in note (d): "In other words, the obligation does not become greater if we regard the liability as ex delicto instead of ex contractu; but neither does it become less." Webb's Pollock on Torts, 549.

The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence sufficient to rebut this presumption. Shearm. & Redf. on Neg., sec. 58.

Appellees' evidence in this case, which is undisputed, raised a "fair presumption of negligence;" no evidence was offered by appellant to rebut this presumption; therefore having proved the resulting injury, they were entitled to recover. What harm, then, is done by the court not leaving it to the jury to say whether the derailment of the train was negligence? Had such an issue been submitted, the jury would have been bound to find on it in favor of appellees, for the undisputed evidence raised a fair presumption of negligence. Had the charge been free from the error complained of, and a verdict been rendered upon the issue of negligence in favor of appellant, it would have been the bounden duty of the court to set it aside, for such a verdict in face of the *fair presumption* that arises from the undisputed evidence could not stand. Therefore, in our opinion, the appellant was not prejudiced by the error complained of.

6. The remaining assignments of error are predicated upon Mrs. Fales being joined as a party plaintiff—questions raised for the first time in this court. Improper joinder of the wife as plaintiff can not be raised for the first time in an appellate court; and where no injury

is shown to have resulted, a judgment will not be reversed even where the exception to the joinder of the wife with the husband has been overruled. Galveston, H. & S. A. Railway Co. v. Baumgarten, 72 S. W. Rep., 80.

There is no error in the judgment which requires its reversal, and it is affirmed.

*Affirmed.*

Writ of error refused.